IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAY R. DREVERS,                                      CV 05-179-MA

            Plaintiff                         OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

            Defendant.

RICHARD F. MCGINTY
P.O. Box 12803
Salem, OR 97309
503-371-2879

            Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1  - OPINION AND ORDER

RICHARD A. MORRIS
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2156

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff filed a civil action for judicial review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income benefits (benefits) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, respectively.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding he is not entitled to benefits and seeks an order reversing the Commissioner's decision and remanding the case for an award of benefits.  The Commissioner contends her decision is based on substantial evidence and free from legal error and requests the court to affirm her decision.

     This court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

**<u>BACKGROUND</u>**

     On January 22, 2002, plaintiff filed applications for

2  - OPINION AND ORDER

benefits, alleging disability since June 15, 2001, because of
high blood pressure, kidney problems, carpel tunnel in the wrist,
and stress.  His applications were denied initially and on
reconsideration.  Plaintiff requested a hearing, which the ALJ
conducted on October 29, 2003.  On January 24, 2004, the ALJ
issued a decision that plaintiff was not disabled and, therefore,
was not eligible for benefits.  Plaintiff filed an appeal with
the Appeals Council.  On February 15, 2005, the Appeals Council
denied plaintiff's request for review.  Accordingly, the ALJ's
decision became the final decision of the Commissioner for
purposes of judicial review.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  Roberts v. Shalala, 66 F.3d 179, 182
(9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet
this burden, a claimant must demonstrate the inability "to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which . . . has lasted
or can be expected to last for a continuous period of not less
than 12 months."  42 U.S.C § 423(d)(1)(A).  The Commissioner
bears the burden of developing the record.  DeLorme v. Sullivan,
924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision

3  - OPINION AND ORDER

if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v.

<u>Yuckert</u>, 482 U.S.137, 140 (1987).  <u>See also</u> 20 C.F.R. § 416.920.
The claimant bears the burden of proof at steps one through four.
<u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each
step is potentially dispositive.

At Step One, the ALJ found plaintiff had not engaged
in substantial gainful activity since the onset of his alleged
disability.  20 C.F.R. § 416.920(b).

At Step Two, the ALJ found plaintiff suffers from a
"somatoform disorder versus conversion disorder, adjustment
disorder with mixed disturbance of emotions/conduct and high
blood pressure," and that "[o]ne or more of [those] impairments
impose significant limitations on [plaintiff's] ability to
function in the workplace."  Accordingly, the ALJ found
plaintiff's impairments are severe within the meaning of 20
C.F.R. §§ 404.1520©) and 416.920(c)(an impairment or combination
of impairments is severe if it significantly limits an
individual's physical or mental ability to do basic work
activities).

At Step Three, however, the ALJ found plaintiff's
impairments did not meet or equal "one of a number of listed
impairments that the [Commissioner] acknowledges are so severe
as to preclude substantial gainful activity."  20 C.F.R.
§ 404.1520(a)(4)(iii) and (d), and § 404.920(a)(4)(iii) and (d).

The ALJ found plaintiff's claimed impairments of degenerative disc disease at L5-SI, carpal tunnel syndrome in the wrist, and kidney problems were not severe.

The ALJ found plaintiff has the residual functional capacity to perform "medium work with only occasional climbing," and "routine, repetitive work with little public contact."  The ALJ also found plaintiff "works best alone, not as part of a team."

At Step Four, the ALJ found plaintiff was not able to perform his past relevant work, which included semi-skilled heavy work as a farm worker, skilled medium work as a machine repairman, and skilled medium work as a systems operator at a water treatment plant.

At Step Five, the ALJ found plaintiff was able to perform semi-skilled and unskilled jobs involving medium to light levels of exertion that exist in significant numbers in the national economy, including grounds keeper, machine tender, office cleaner, and package sealer.

Accordingly, the ALJ found plaintiff was not under a disability.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

Plaintiff alleges the ALJ's non-disability finding is not supported by substantial evidence because the ALJ failed to (1) include plaintiff's lumbar degenerative disc disease and anxiety disorder as severe impairments, (2) determine whether

the combined effects of plaintiff's impairments met or equaled any listed impairments, (3) consider plaintiff's severe and non-severe impairments, (4) adequately assess plaintiff's residual functional capacity, (5) adequately assess and consider plaintiff's testimony, and (6) adequately assess and consider the lay witness testimony.[1]

## THE ADMINISTRATIVE RECORD

### TESTIMONY

### Plaintiff.

Plaintiff was 56 years old on the date of the hearing.  He has one year of college with specialized training in theater.  His employment history includes farm work, machine repairman and systems operator.

From 1978 until 1992, plaintiff worked only two years.  He has "worked for [him]self" because he is "allergic to bosses" and feels "uncomfortable around them."  During that time-frame, plaintiff lived with his then-girlfriend, Shaffia Richards, who supported him.  After the relationship ended, he worked at Breitenbush Hot Springs, a worker-owned cooperative, performing maintenance on the generating, sewer treatment, and electrical plants.  He was "fired" because he was unwilling to "make nice-

---

[1]Plaintiff sets forth eight separate "assignments of error." I have combined several of them because they address the same or related issues.

nice."  After that, plaintiff returned to live at the farm with Richards.

Plaintiff states he is unable to work because of several physical and psychological impairments:

a.  Hypertension-Chest Pains.

Plaintiff has poorly controlled high blood pressure, which gives him chest pains and causes his brain to go "fuzzy."  He has the symptoms of a heart disease but tests have not found anything wrong.  If he works or stays in a stressful situation, he has to lie down.  If he does not lie down, he falls down.  Because the chest pains limit his endurance and stamina, plaintiff can walk only for 20 minutes and stand for about 30 minutes.  After that, he needs to lay down.  He is "fairly okay" when he is sitting down.  He is able to pick up 5-6 lbs of wood at a time for 10 minute periods.  He will load a trailer with 200 lbs of wood and then rest.  After 30 minutes of work, he will rest for 15-30 minutes.  In a typical day, plaintiff will lay or sit down 5-10 times for 15-30 minutes at a time.

Apart from his need to lay down, plaintiff has a general lack of energy on average three days in a typical week.

Plaintiff's medication to control his high blood pressure causes him heartburn twice a day for half an hour at a time and another medication causes him to become dizzy.

    b.   <u>Carpal Tunnel Syndrome</u>.

    Plaintiff has been diagnosed with carpal tunnel syndrome.
His left hand goes to sleep "all the time" or "once an hour."
He has to rest the hand over his heart while he is sitting or
laying down, and the numbness will then go away.  Plaintiff has
difficulty handling large and small objects in his left hand when
it is numb.  Plaintiff's right hand was injured in an accident 30
years ago, it does not work "fine" but plaintiff is used to it.

    c.   <u>Neck, Back, and Leg Problems</u>.

    Plaintiff states he cannot raise his arms above his head
"worth a darn."  He does not know why.  He can turn his neck to
the left and right as well as up and down, without problem
although his neck is "a little stiff."  Plaintiff also stated he
has pain in his legs and back.

    d.   <u>Psychological Impairments/Bi-Polar Disorder</u>.

    Plaintiff went to Yamhill County Mental Health and was
prescribed several medications, one of which, Depakote, was to
treat a bi-polar condition.  Although internist, Stephanie Cha,
M.D., told him he has a bi-polar disorder, Plaintiff does not
know if he is or is not bi-polar.  The medication helps.

    Plaintiff continues to hear voices but now "it's a lot
quieter."

    In summary, plaintiff believes his "main problem" is that he

9 - OPINION AND ORDER

has "gotten used to not working for other people, and so that I've gotten to the point where the people who used to hire me didn't like hiring me because I kept lying down."

**Lay Witness Shaffia Richards.**

Richards has known plaintiff since 1979.  Plaintiff lives in a room at her home.  She observes him on a daily basis, and has observed he has "very low energy."  Plaintiff has been diagnosed with high blood pressure and he has told Richards he has chest pains and pain in his right leg.

Richards has observed that if plaintiff gathers wood for 20 minutes, "he lies down on the ground right where he is when he feels the exhaustion."  He used to use a hand lawnmower and would be exhausted after 20 minutes.

Plaintiff performs chores, including feeding the chickens and collecting their eggs, occasionally cleaning out the chicken house, sweeping the kitchen, cooking supper two or three times a week, washing dishes, collecting the mail and newspaper, and changing the oil in her car.

Plaintiff has a problem with anger and Richards asked him to get a psychological evaluation.

In addition to providing plaintiff with a room to stay, Richards has loaned him money although she does not know how much.  She pays for some of plaintiff's expenses, including gas,

car insurance, and movies.

**Vocational Expert (VE).**

VE Kay Hargrave testified that plaintiff's past relevant employment included semi-skilled heavy farm labor, skilled medium-level work as a machine repairman (heavy work as described by plaintiff), and skilled medium-level work as a systems operator for a resort.

The ALJ asked the VE to consider whether a person could perform plaintiff's past relevant work if he were able to do medium-level work, with only occasional climbing, involving a routine repetitive work environment with little public contact, working best alone and not part of a team, but able to engage in normal social interactions. Based on those limitations, the VE excluded all of plaintiff's past relevant work.

The VE, however, testified that, in light of his age, education, and prior work experience, a person with the above limitations could perform semi-skilled medium-level work as a groundskeeper, semi-skilled medium-level work as a machine tender, and unskilled medium-level work as an office cleaner. Such jobs exist in substantial numbers in the national and state economy.

When the hypothetical was modified to describe a person who would need to sit during the workday, not engage in physical

exertion, lift only one pound, and work on an intermittent but not sustained basis, the VE testified such a person would be unemployable.

## MEDICAL RECORDS

### Treating Physicians.

#### Physical Impairments.

Plaintiff's relevant history of medical treatment for physical impairments includes the following:

a.  Carpal Tunnel Syndrome.

In June and July 1999, Joseph Zitterman, M.D., examined plaintiff for complaints of left arm tingling and pain, particularly at night.  He diagnosed carpal tunnel syndrome, with improving symptoms and no need for plaintiff to use a brace.

b.  Kidney Problems.

From June-November 1999, Dr. Zitterman, treated plaintiff for "kidney pain from time to time."  By November, the "renal insufficiency" was "fairly stable."

In February 2002, plaintiff complained to Stephanie Cha, M.D., that he is "aware" of his kidneys because they "ache" and "at times can be more painful."

c.  Hypertension - Cardiac Complaints.

Since June 1999, plaintiff has been treated for hypertension and chest pains.  The hypertension is fairly well-controlled by

medications, although plaintiff has had flare-up, most notably following an angiogram in September 2001.

In September 2001, because of recurrent chest pains, plaintiff underwent a cardiac consultation with Donald. P. Stutzman, M.D.  On September 21, 2001, at Dr. Stutzman's recommendation, plaintiff underwent a coronary arteriogram, left heart catheterization, left ventriculogram, and selective renal arteriogram.  The results were all normal, showing no coronary disease or cardiac pathology.

In August 2001, plaintiff saw Dr. Cha for complaints of chest tightness and fatigue.  Dr. Cha noted plaintiff was in no acute distress and had full range of motion.

In October 2001,  Dr. Cha evaluated plaintiff's hypertension and noted plaintiff was in a "jolly good mood."  Dr. Cha noted the need to find other blood pressure medicines that plaintiff could tolerate.  One week later, Dr. Cha noted plaintiff's hypertension was "better controlled."

In February 2002, Dr. Cha noted plaintiff's hypertension was under "fair control"

In May 2002, plaintiff was examined by Leesa Azar, M.D., for complaints of "memory problems."  A subsequent MRI revealed "multiple periventicular and subcortical white matter plaques" that might be indicative of "small vessel ischemia."  In

addition, multiple sclerosis could not "be excluded" based on the MRI results.

In June 2002, plaintiff again saw Dr. Azar, complaining of leg swelling for the past year. Dr. Azar did not find any significant edema.

In August 2002, Dr. Cha noted that a neurologist was of the opinion plaintiff's memory loss was related to hypertension and not multiple sclerosis or another degenerative disease.

In April 2003, Dr Cha reported that plaintiff still had chest pressure:

> He notes that he still cannot work and feels pretty disabled. Basically if at any time he tries to do any physical work he will either get chest pressure or his head will feel "fuzzy." If he tries to work he will get very tired. He states that sometimes he will actually pass out. He states that about 60-90 minutes is his limit as far as any physical work goes. He feels frustrated about this because he states he would like to do more work, but he does not feel like he is able to. He feels like in general he is a little better but it is still a big issue for him.

Tr. 326.

In July 2003, Dr. Cha noted plaintiff "in general, is doing very well" and that "[h]is blood pressure continues to be under reasonable control."

    d.  <u>Lumbar Degenerative Disc Disease</u>.

In June 1999, an x-ray showed plaintiff had moderate

degenerative disc disease at C5-6, mild degenerative disc disease at C4-5 and C6-7, with mild osteophytic foraminal narrowing at C6-7 bilaterally.

In July 2002, a lumbar spine imaging report reflected plaintiff had a "moderate narrowing of L-5-S1 disc space" and mild degenerative disc disease.

In August 2002, Plaintiff saw Dr. Cha, complaining of back and leg problems. Dr. Cha diagnosed left calf pain of unknown etiology.

**Psychological Impairments.**

Plaintiff's history of psychological treatment for claimed impairments relating to Anxiety Disorder/Adjustment Disorder, and Bi-Polar Disorder are as follows:

In February 2002, Dr. Cha diagnosed plaintiff as suffering from anxiety disorder NOS, because of "increased stress."

On April 26, 2002, plaintiff sought treatment from Suzanne Wong, LPC, at Yamhill County Mental Health Program because of "[e]motions all over the place," which were causing him problems with his house-mate. Plaintiff reported he was having angry outbursts that had increased from "a couple of times a year" to "a couple of times a week" and his ex-girlfriend, who provides his housing, told him he needed to get help. Ms. Wong diagnosed adjustment disorder, partial control of hypertension, and

psychosocial environmental problems.  She assessed a GAF score of 51.[2]

On June 7, 2002, psychiatrist Shirley Roffe, M.D., who acknowledged she was "not trained in anything but the basics of anger management," also examined plaintiff.  Her diagnosis included "R/O Bi-Polar Spectrum Disorder, chronic."  She prescribed "some medication treatment [Risperdal and Depakote] for what sounds like a mood disorder."  She assessed a GAF score of 50.

On June 18, 2002, Dr. Roffe reexamined plaintiff and found marked improvement in plaintiff's mood, with decreased generalized anxiety, and decreased auditory hallucinations.  Dr. Roffe reduced the dosage of Risperdal and increased the dosage of Depakote.

On July 9, 2002, Dr. Roffe again examined plaintiff and found he was "mildly dysphoric" (agitated) with "some element of depression."  Plaintiff had previously stopped taking his medications after he began experiencing left leg pain, which he attributed to the medications.  Thereafter, Dr. Roffe transferred

---

[2] GAF is "Global Assessment of Functioning.  A score in the range of 51-60 reflects "moderate symptoms OR moderate difficulty in social, occupational, or school functioning."  DSM-IV, p. 32 (4th Ed. 1994).  A score in the range of 41-50 reflects "serious symptoms OR serious impairment in social, occupational, or school functioning."  Id.

plaintiff's care to psychiatrist Holly Hoch. M.D.

On July 16, 2002, Dr. Hoch restarted plaintiff on the Risperdal and Depakote medications.

On September 11, 2002, plaintiff reported to Dr. Hoch that he realized "it's all in my head," his anxiety was decreased, and his mood was better.  Dr. Hoch reiterated plaintiff's diagnosis as anxiety disorder NOS.  Dr. Hoch also assessed a GAF score of 50.

In January 2003, plaintiff reported to Dr. Hoch that he was "doing pretty good" and that an increase in medication had "virtually eliminated" the "chatter" (auditory hallucinations).

In February 2003, plaintiff continued to report to Dr. Hoch that he was "doing well," was "much less anxious," his mood symptoms and auditory hallucinations were under control, and that his blood pressure "has finally been relatively good."

On April 9, 2003, plaintiff reported to Dr. Cha that he was "stable" and "doing okay," but he was concerned over his medications relating to his psychological issues because he had lost his mental health benefits.  Although plaintiff was not hearing voices anymore, he was "a little more depressed."

**Agency Examining and Consulting Physicians**.

**Physical Impairments-Residual Functional Limitations.**

On February 8, 2002, Linda Jensen, M.D., reviewed

plaintiff's medical records on behalf of the agency to assess
plaintiff's residual functional capacity.  Dr. Jensen concluded
plaintiff could occasionally lift 50 lbs., frequently lift 25
lbs., stand for six hours in a workday, sit for six hours in a
workday, and push and pull weights within the above limitations.
Plaintiff's only significant limitation was that he should climb
only occasionally.

In summary, Dr. Jensen found plaintiff's subjective
complaints were inconsistent with objective findings and were,
therefore, "only partially credible."

**Psychological Impairments.**

On April 8, 2002, psychologist, Dick Wimmers, Ph.D.,
reviewed plaintiff's medical records and concluded that
plaintiff's psychological limitations were "non-severe" and
included only "mild" difficulties in maintaining social
functioning.  Dr. Wimmers noted plaintiff "is able to be socially
appropriate but prefers to not have to deal with people and to
work alone."  Dr. Wimmers accepted Dr. Cha's diagnosis of an
anxiety disorder.

On July 23, 2002, psychologist Dorothy Anderson, Ph.D.,
agreed with the diagnoses of non-severe Adjustment Disorder and
Anxiety Disorder NOS.  She concluded plaintiff had mild
difficulties in maintaining social functioning and maintaining

concentration, persistence, and pace.

On April 16, 2003, Paul Stoltzfus, Psy.D, interviewed plaintiff and conducted an MMPI-II test. Dr. Stoltzfus concluded the test results were invalid because seven of the ten scales were elevated, including the "F" scale. Dr. Stoltzfus found plaintiff's "subjective complaints regarding physical and mental health issues appear to be grossly exaggerated, and are not consistent with objective medical or psychological tests." Dr. Stoltzfus diagnosed a Somatoform Disorder v. Conversion Disorder, and Malingering. He scored plaintiff's GAF level at 75, i.e., any symptoms are "transient and execrable reactions to psychosocial stressors . . . .; no more than slight impairment in social, occupational, or school functioning." DSM-IV, p. 36.

## DISCUSSION

In light of the above record, and the ALJ's findings, the court addresses each of plaintiff's assignments of error.

**1.    Did the ALJ err in failing to include plaintiff's lumbar
        degenerative disc disease and anxiety disorder as severe
        impairments at Step Two of the Disability Analysis?**

    a.    Lumbar Degenerative Disc Disease.

The ALJ noted although there was a diagnosis of mild degenerative disc disease dating from June 2002, and various treating physicians repeat the diagnosis in their reports, there is little medical evidence that plaintiff was treated for that

condition.  Plaintiff points to his testimony that he had limited
stamina and endurance while walking and standing, and he had pain
in his legs and back.  The ALJ, however, found plaintiff's
subjective complaints were not "fully credible" because plaintiff
had not sought "consistent medical treatment for his physical
impairments at all."  Dr. Jensen, the agency's reviewing
physician, also found plaintiff's subjective complaints were
inconsistent with objective findings and, therefore, were only
"partially credible."  In addition, the ALJ noted plaintiff was
prescribed over-the-counter Tylenol for his complaints of leg
pain in January 2003.

     At Step Two of the disability analysis, plaintiff has
the burden to prove he has a medically severe impairment or
combination of impairments.  Bowen, 482 U.S. at 140.  While
plaintiff has proven he suffers from a medically determinable
impairment, lumbar degenerative disc disease, he has not shown
this impairment is severe, or that it significantly limits his
ability to do basic work activities, specified at 20 C.F.R.
§ 404.1521; see also SSR 96-3p.  Thus, the ALJ's Step Two
finding, excluding degenerative disc disease, is supported by
substantial evidence.


     b.  Anxiety Disorder.

     Plaintiff asserts Drs. Cha and Hoch diagnosed plaintiff

as suffering from Anxiety Disorder NOS and Dr. Wimmers, the
agency's reviewing psychologist, concurred in that diagnosis.
Dr. Wimmers, and Dr. Anderson, another psychologist who reviewed
plaintiff's psychological records, also found, however, that the
anxiety disorder was "mild" and "non-severe."  The ALJ noted
that Dr. Stoltzfus, the consulting psychologist who interviewed
and tested plaintiff, also concluded that plaintiff "probably
does experience a certain amount of anxiety when out in public."
Dr. Stoltzfus qualified that conclusion, however, by stating
"[plaintiff] is certainly able to do and probably does much more
than he reported in the current evaluation."

As with the lumbar degenerative disc disease, plaintiff has
failed to present any credible evidence that his anxiety disorder
is severe or that it significantly limits his ability to do basic
work activities listed at 20 C.F.R. § 404.1521.  Thus, I agree
with the ALJ's finding at Step Two that did not include Anxiety
Disorder NOS in the list of plaintiff's severe impairments.

**2.   Did the ALJ err in failing to determine whether the combined
effects of plaintiff's impairments relating to degenerative
disc disease and/or anxiety disorder meet or equal any
listed impairments at Step Three of the Disability Analysis?**

Plaintiff argues that if either his degenerative disc
disease or anxiety disorder, or both, were found to be severe
impairments, the ALJ erred at Step Three of the disability
analysis by not considering whether the "combined" effects of

those impairments met a listed impairment.

I have concluded the ALJ did not err in not finding that those impairments were severe. Accordingly, the ALJ was not required to consider them at Step Three.

**3. Did the ALJ err in failing to consider plaintiff's severe and non-severe impairments at Step Four of the Disability Analysis?**

Plaintiff asserts he suffers from kidney problems and carpal tunnel syndrome, which the ALJ found to be non-severe impairments. He argues, however, that the ALJ did not include these conditions in his residual functional capacity analysis.

The ALJ fully analyzed the credible evidence relating to plaintiff's functional limitations caused by his impairments and found plaintiff had no limitations in his daily activities. In his findings regarding plaintiff's residual functional capacity, the ALJ included every limitation which was supported by credible evidence. I agree with the ALJ's findings. In particular, I note the lack of substantial evidence that plaintiff's non-severe impairments of carpal tunnel syndrome and kidney problems in any way limited his functional capacity.

**4. Did the ALJ err in failing to adequately assess plaintiff's residual functional capacity?**

Plaintiff asserts the ALJ used an "invalid" residual functional capacity in his hypothetical question to VE Hargrave. In essence, plaintiff argues one of his treating physicians, Dr.

22 - OPINION AND ORDER

Cha, offered a medical opinion that plaintiff could not perform work on a sustained basis, and the ALJ failed to give adequate reasons for rejecting that opinion in determining plaintiff's residual functional capacity.

On August 29, 2003, Dr. Cha addressed plaintiff's ability to work in a letter to plaintiff's attorney:

> I believe [plaintiff's] diagnosis of bipolar disorder with hallucinations and anxiety state account for the majority of his disability.  Other medical diagnoses include hypertension, chronic renal insufficiency and exceptional chest pain with dyspnea and fatigue.  He has had an evaluation for the latter diagnosis and does NOT appear to have any cardiac diagnosis.  His symptoms are exacerbated by exertion and emotional stress. He has improved under psychiatric care and medications, though probably not to the level at which he could do any type of job requiring physical exertion or "stressors."
>
> He is able to sit without disability. Walking up hills tire him out.  He could probably lift and work with items less than one pound if the stress levels are very low.
>
> I believe his medical condition at this time would not allow [plaintiff] to perform work . . . on a sustained basis because of difficulties with [concentration, attention, or memory, and production stamina].  I am not certain about his attendance; he does keep all his appointments with me.
>
> I do not have objective evidence for his reported pain.
>
> I do not feel [plaintiff] is malingering.

Tr. 286.

An ALJ may reject the uncontradicted medical opinion of a treating physician only for clear and convincing reasons supported by substantial evidence in the record.  Radix v. Cater, 157 F.3d 715, 725 (9th Cir. 1998).  Inconsistencies and ambiguities noted by the ALJ represent specific and legitimate reasons for rejecting the medical opinion of a treating doctor.  Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

The ALJ gave "Dr. Cha's assessment regarding [plaintiff's] work capacity little weight" because it "was inconsistent with the weight of the evidence."  The ALJ noted that Dr. Cha is not a mental health provider and, therefore, "is not fully qualified to assess the claimant's psychiatric condition.  Also, there are minimal treatment records from this physician in any event."

The ALJ specifically noted psychological reports from mental health care treatment providers indicating, inter alia, medications consistently improved plaintiff's mental status, and his mood symptoms and hallucinations were under control over time.  In addition, the ALJ relied significantly on the findings of psychological consultant, Dr. Stoltzfus, who examined plaintiff and administered an MMPI-II test, which led to a diagnosis of somatoform disorder v. conversion disorder (severe), and malingering.

The ALJ also noted the findings of agency psychologists to

the effect that plaintiff's mental impairments were not severe. Although the ALJ found their opinions were credible at the time, he rejected them in favor of Dr. Stoltzfus's subsequent opinion to the contrary, at least as to the diagnosis of somatoform disorder v. conversion disorder.  The ALJ, however, also noted that Dr. Stoltzfus had "serious questions regarding the claimant's credibility."

On this record, I find the ALJ gave clear and convincing reasons for rejecting Dr. Cha's opinion on the issue of disability.  In addition, I find the ALJ's hypothetical to VE Hargrave regarding plaintiff's residual functional capacity more than adequately took account of plaintiff's mental impairments.

**5.   Did the ALJ err in failing to adequately assess and consider plaintiff's testimony?**

The ALJ found plaintiff's "allegations of total inability to work were not fully credible."  Plaintiff contends the ALJ failed to give clear and convincing reasons for that finding. I disagree.

A plaintiff who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce'" the symptoms alleged. (the Cotton test).  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)(quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403,

25 - OPINION AND ORDER

1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  <u>Smolen v. Cater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant has met the standards set out in the <u>Cotton</u> test and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of his symptoms.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  <u>See</u> <u>also</u> <u>Smolen</u>, 80 F.3d at 1283.

To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  <u>Id</u>. at 1284 (citations omitted).

Here, there is affirmative evidence of malingering by plaintiff based on the results of the MMPI-II test conducted by Dr. Stoltzfus.  Dr. Stoltzfus, however, also diagnosed a severe somatoform disorder v. conversion disorder, and adjustment disorder.  In essence, plaintiff argues these diagnoses create an

26 - OPINION AND ORDER

inconsistency with Dr. Stoltzfus's malingering diagnosis and the latter diagnosis, therefore, should be discounted.  According to plaintiff, therefore, the ALJ was required to, but did not,  give clear and convincing reasons for not crediting plaintiff's testimony regarding the severity of his impairments.

Assuming arguendo, there is an ambiguity in Dr. Stoltzfus's diagnoses, it does not avail plaintiff in this case.  The ALJ gave clear and convincing reasons for not fully crediting plaintiff's subjective complaints, regardless of the malingering diagnosis.  He stated:

> [I] find[] that the claimant's allegations of total inability to work because of his impairments are not fully credible.  The claimant has not sought consistent medical treatment for his physical impairments at all.  Further, the evidence on such impairments is minimal or the evidence indicates it is controllable.  The evidence also establishes that the claimant's mental impairment was improved with medication. The medical records progressively detail how improved the claimant's condition became. . . .
>
> *    *    *    *
>
> The undersigned has also considered the claimant's work history and notes the claimant had several years of low or no earnings prior to his alleged onset date. This indicates that the claimant was not motivated to work even prior to his alleged onset date of disability.  This further detracts from his credibility.  One is left with the distinct impression that the claimant has made a life-style choice to not work on a consistent basis.  As he testified, he is "allergic" to bosses, wishes only self-

27 - OPINION AND ORDER

                    employment, or, as the record demonstrates,
                    to be supported by his now former girlfriend
                    who has made a home for him since 1979.

Tr. 20.

     I find the ALJ gave clear and convincing reasons for not

crediting plaintiff's subjective complaints and his allegations

of inability to work.

**5.   Did the ALJ err in failing to adequately assess and consider lay witness testimony?**

     Plaintiff alleges the ALJ failed to give clear and

convincing reasons for rejecting the testimony of plaintiff's

housemate, Shaffia Richards.  As noted, she testified that

plaintiff has "very low energy," and has observed plaintiff

needing to lay down after 20 minutes of stacking wood.  Plaintiff

also told her he has chest and leg pains.

     Lay testimony as to a claimant's symptoms "is competent

evidence that an ALJ must take into account," unless he

"expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so."  Lewis v. Apfel,

236 F.3d 503, 511 (9th Cir. 2001).  One reason for which an ALJ

may discount lay testimony is that it conflicts with medical

evidence.  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th

Cir.1984).

     The ALJ did not specifically reject Richards' testimony

although he noted the following:

28 - OPINION AND ORDER

> [Richards'] testimony as to the claimant's
> impairments was dependent on the claimant's
> subjective complaints, which are not
> considered fully credible.  In addition, as a
> lay person, she cannot determine if observed
> behaviors are medically compelled.
> Significantly, Ms. Richards supports the
> claimant financially, providing him a home
> and "loans."  She did testify he promised to
> repay her if awarded SSD benefits.  The
> couple's social and financial relationship
> suggests bias on her part."

Tr. 20.

I find the ALJ properly assessed Richards' testimony and,
although not specifically rejecting it outright, gave germane
reasons for not according it substantial weight.

In summary, I find the ALJ's finding that plaintiff was not
under a disability is supported by substantial evidence and is in
accordance with the requirements of the law.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the final decision
of the Commissioner and **DISMISSES** this action.

IT IS SO ORDERED.

DATED this 21 day of March, 2006.


   /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge


29 – OPINION AND ORDER